## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MARSHAE JACKSON,                           Case No. 1:23-cv-01110

                    Plaintiff,

         -vs-                              JUDGE PAMELA A. BARKER

WALMART, INC.,

                    Defendant.             MEMORANDUM OPINION & ORDER

Before the Court is Defendant Walmart, Inc.'s ("Walmart") Motion for Judgment on the Pleadings filed on February 7, 2024.  (Doc. No. 22.)  On, March 7, 2024, Plaintiff Marshae Jackson ("Jackson") filed a Brief in Opposition.  (Doc. No. 24.)  And, on March 21, 2024, Walmart filed a Reply in support of its Motion.  (Doc. No. 28.)

For the following reasons, the Court GRANTS Walmart's Motion for Judgment on the Pleadings.

## I.      Procedural History

On June 1, 2023, Jackson filed a Complaint against Walmart alleging nine causes of action: (1) a violation of 42 U.S.C. § 1981; (2) a violation of 42 U.S.C. § 2000a; (3) a violation of 42 U.S.C. § 1983; (4) false imprisonment; (5) intentional infliction of emotional distress; (6) misrepresentation; (7) defamation; (8) "negligently participating in a wrongful prosecution;" and (9) "negligent asset protection policies and procedures."  (Doc. No. 1.)  On September 5, 2023, Walmart filed an Answer to Jackson's Complaint.  (Doc. No. 7.)

On October 24, 2023, the Court held a Case Management Conference and set case deadlines. (Doc. Nos. 14, 15.) In particular, the Court set January 22, 2024, as the deadline for amending pleadings and adding new parties without leave of court. (Doc. No. 15, PageID# 73.)

On November 17, 2023, Jackson filed an Amended Complaint to correctly name Walmart, but her Amended Complaint is otherwise unchanged from her original Complaint. (Doc. No. 18.) Less than two weeks later, Walmart filed an Answer to Jackson's Amended Complaint. (Doc. No. 19.)

On February 7, 2024, Walmart moved for judgment on the pleadings on all nine of Jackson's causes of action. (Doc. No. 22.) Jackson filed a Brief in Opposition to Walmart's Motion on March 7, 2024. (Doc. No. 24.) And on March 21, 2024, Walmart filed a Reply in support of its Motion. (Doc. No. 28.)

## II. Factual Allegations

Jackson sets forth the following factual allegations in her Amended Complaint. (Doc. No. 18.)

### A. Walmart's Shoplifting Policies

Walmart is a member of the Retail Leaders Association and Loss Prevention Research Council ("LPRC"). (*Id*. at ¶ 17.) Walmart "drafts, discusses, and implements [loss prevention] techniques and procedures in accordance with the LPRC's guidelines." (*Id*. at ¶ 20.) Walmart employs Asset Protection Specialists at each of its locations who "are trained to follow corporate policies, procedures, and guidelines concerning employee theft, general security, and retail theft." (*Id*. at ¶ 21.)

Part of the Asset Protection Specialists' job is to collect and compile data on suspected shoplifters. (*Id*. at ¶ 22.) They typically collect this data from the suspect's driver's license. (*Id*. at

2

¶ 23.)  Asset Protection Specialists "are trained to detain the individual in an office or room, take their license, and place the information they acquire into a database."  (*Id*. at ¶ 24.)  After reviewing the circumstances of the alleged theft, they "determine whether the individual suspected of shoplifting should be prosecuted."  (*Id*. at ¶ 25.)

If an individual "is deemed to have shoplifted, local authorities are contacted, and that individual is either arrested or summoned to appear at the appropriate tribunal in that particular jurisdiction."  (*Id*. at ¶ 26.)  Walmart's Asset Protection Specialists have "full control over who and under what circumstances to pursue criminal charges against."  (*Id*. at ¶ 27.)

The data that Asset Protection Specialists collect on suspected shoplifters "indicates a racial bias, as demonstrated by the fact that the vast majority of those prosecuted under these guidelines are African American."  (*Id*. at ¶ 29.)  The policies, procedures, guidelines, and data "indicate that individuals suspected of shoplifting that are white are far less likely to be prosecuted than those individuals who are African American," and they show that "Walmart Asset Protection Specialists target African Americans."  (*Id*. at ¶¶ 32, 33.)

**B.  Events of June 1, 2021**

Jackson is a thirty-year-old African American woman.  (*Id*. at ¶ 37.)  On or about June 1, 2021, she was shopping at Walmart at 7245 Market Place in Bainbridge, Ohio.  (*Id*. at ¶ 41.)  She selected several items from the store's shelves.  (*Id*. at ¶ 42.)  She then went to the self-checkout machine to scan and pay for the items.  (*Id*. at ¶ 43.)  After scanning the items and paying for them using her credit card, she proceeded to the store's exit.  (*Id*. at ¶ 44.)

A Walmart Asset Protection Specialist was at the exit checking shoppers' receipts.  (*Id*. at ¶ 45.)  The Specialist stopped Jackson as she was exiting the store.  (*Id*.)  The Specialist escorted

3

Jackson to a secured room within the store.  (*Id*.)  There, the Specialist "accused" Jackson of shoplifting, took Jackson's license, and questioned Jackson about the alleged theft.  (*Id*. at ¶¶ 47, 48.)

Jackson pleaded with the Asset Protection Specialist and other Walmart employees to not charge her with theft.  (*Id*. at ¶ 49.)  She explained that she did not shoplift and that she did not intend to shoplift.  (*Id*.)  She offered to pay for the unscanned items and explained that it was a "simple mistake."  (*Id*.)  Jackson's "interrogat[ion]" in the secured room lasted approximately 2 hours.  (*Id*. at ¶ 51.)

The Asset Protection Specialist and other Walmart employees "ignor[ed]" Jackson's "assertions and offer to pay."  (*Id*. at ¶ 50.)  Instead, they contacted local law enforcement, who arrived shortly thereafter.  (*Id*.)  Ultimately, Jackson received a citation and summons to appear in court for shoplifting.  (*Id*. at ¶ 52.)  She "was never allowed nor given the option to pay for the items she accidently failed to scan."  (*Id*. at ¶ 53.)

At court, "Jackson vehemently proclaimed her innocence."  (*Id*. at ¶ 54.)  The court placed her in a diversion program and all charges were eventually dropped.  (*Id*.)

The experience caused Jackson to suffer mental and physical stress and "tarnished" her "good name."  (*Id*. at ¶ 57.)

## III.    Law and Analysis

### A.    Rule 12(c) Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the

4

moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim

5

is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

**B.      First Cause of Action: Discrimination in Violation of 42 U.S.C. § 1981**

In pertinent part, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  42 U.S.C. § 1981(a).  "[M]ake and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The Sixth Circuit has applied Section 1981 to discrimination in a retail establishment.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).  In that context, a plaintiff must plead that

> (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id*.

Walmart argues that Jackson fails to plead the third element because she "was never actually prevented from making a purchase."  (Doc. No. 22, PageID# 127.)  Walmart contends that it "must have taken affirmative steps to actually prevent [Jackson] from making a purchase for Section 1981 to apply."  (*Id*. at PageID# 128 (citing *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1313 (N.D. Ga. 2001)).)

6

Jackson responds that Walmart ignores the fact that it rejected Jackson's offer to pay for the items that she allegedly stole.  (Doc. No. 24, PageID# 142.)  And she argues that Walmart's discrimination "began from the moment she attempted to check out with her goods."  (*Id*. at PageID# 143 (citing *Leach v. Heyman*, 233 F. Supp. 2d 906, 908 (N.D. Ohio 2002)).)

The Supreme Court has held that Section 1981 "offers relief" in two circumstances: (1) "when racial discrimination blocks the creation of a contractual relationship," and (2) "when racial discrimination impairs an existing contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *see also Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).  Here, Jackson fails to allege either circumstance.

First, Jackson fails to allege that Walmart blocked the creation of a contractual relationship with her.  In her Amended Complaint, she asserts that she "selected several items from [Walmart's] shelves," went to the "self-checkout register . . . to scan and pay for all of the items she selected," "scanned her items," and "paid for them with a credit card."  (Doc. No. 18, ¶¶ 42-44.)  Walmart therefore never blocked the creation of a contract with Jackson.  Indeed, it did just the opposite.  Walmart offered items for sale, Jackson selected those items, and Jackson paid for them.  Therefore, Walmart and Jackson formed a contract as to those items.  S*ee, e.g., Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 F. App'x 174, 178 (6th Cir. 2002) (explaining elements to prove the existence of a contract under Ohio law).

In her Response, Jackson changes tack.  She argues that actually her claim is that Walmart "prevented [her] from purchasing the item[s] at the center of the so-called shoplifting when she offered to pay for it."  (Doc. No. 24, PageID# 142.)  But she does not allege this in her Amended Complaint.  Rather, she alleges that:

> Walmart locations offer products for sale, Ms. Jackson accepted this offer by shopping and selecting said products, Ms. Jackson provided consideration by paying for said items, and Defendant breached said contract by terminating the contract because Ms. Jackson is an African American.

(Doc. No. 18, ¶ 64.)  A plaintiff cannot "amend [her] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  Moreover, the second element of a Section 1981 claim requires that a plaintiff allege that she "sought to make or enforce a contract for **services ordinarily provided by the defendant**."  *Christian*, 252 F.3d at 872 (emphasis added).  Jackson's Amended Complaint contains no allegation that Walmart "ordinarily" accepts offers from its customers to pay for goods it believes to be stolen.  The Court therefore rejects this argument.

Second, Jackson fails to allege that Walmart "impair[ed] an existing contractual relationship." *Domino's Pizza*, 546 U.S. at 476.  Jackson alleges that Walmart impaired its contractual relationship with her as to the items that she inadvertently did not pay for and that Walmart "wrongfully accus[ed] [her] of stealing . . . due to her race."  (Doc. No. 18, ¶ 62.)  But since a contract requires offer, *acceptance*, and *consideration*, *see Kirkland*, 34 F. App'x at 178, Jackson did not form a contract with Walmart as to these unpaid-for items.  Since there was no contract as to these items, there was no existing contractual relationship for Walmart to impair.  *See Brintley v. St. Mary Mercy Hosp.*, 545 F. App'x 484, 487 (6th Cir. 2013) (holding that the plaintiff "must first show the existence of a contract between her and [the defendant]" to proceed with a Section 1981 claim).

Jackson argues that *Leach v. Heyman* demands a different result.  In *Leach*, the district court denied summary judgment on a Section 1981 claim where the plaintiff successfully purchased items from a gas station but was insulted, grabbed, and slapped because of his race as he was leaving the store.  233 F. Supp. 2d at 908-09.  The court concluded that "a jury could find that [the defendant's]

treatment of plaintiff was continuous, and manifested animus the entire period that he was in the store." *Id*. at 910.

The Court finds that *Leach* does not dictate a different result. To begin with, the facts are dissimilar. Jackson does not allege that Walmart discriminated against her "the entire period" that she was in the store, but rather only when the Asset Protection Specialist accused her of theft. Additionally, the decision in *Leach* is inconsistent with the Sixth Circuit's decision in *Christian v. Wal-Mart Stores*. In *Christian*, the Sixth Circuit had "no trouble" concluding that the plaintiff "made herself available to enter into a contractual relationship" with Walmart where "she selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store." 252 F.3d at 874. It was the fact that Walmart blocked the plaintiff from completing her purchase that gave rise to the plaintiff's Section 1981 claim in *Christian*. As explained above, that is not the circumstance in this case—Jackson alleges that she completed her purchases.

Further, the *Leach* decision is at odds with several other Courts of Appeals. *See Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (holding that a Section 1981 claim requires that the plaintiff allege that the merchant "thwarted" an actual attempt to contract); *Lopez v. Target Corp.*, 676 F.3d 1230, 1235 (11th Cir. 2012) (affirming dismissal of a Section 1981 claim because the plaintiff "ultimately succeeded in purchasing his desired items from Target"); *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013) (affirming dismissal of a Section 1981 claim because the plaintiff did not allege that Kmart "hindered [her] from making and completing a layaway purchase.") Lastly, *Leach* (and *Christian*) were decided before the Supreme Court's decision in *Domino's Pizza*, which instructs that Section 1981 offers relief only where a defendant either blocks the creation of a

contractual relationship or impairs an existing contractual relationship because of an individual's race. 546 U.S. at 476.

Accordingly, the Court concludes that Jackson has failed to state a claim under Section 1981, and, therefore, it dismisses her first cause of action.

### C.     Second Cause of Action: Discrimination in Violation of 42 U.S.C. § 2000a

Walmart argues that Jackson's second cause of action under Title II of the Civil Rights Act of 1964, 42 U.S.C. § Section 2000a, fails because the statute only permits injunctive relief, and such injunctive relief is not available since Jackson's "claims arise out of a single incident." (Doc. No. 22, PageID# 128-29.)

Jackson responds that Walmart incorrectly states the law and that she can recover compensatory damages where "the discrimination in question was intentional." (Doc. No. 24, PageID# 144 (citing *Williams v. Hayman*, 657 F. Supp. 2d 488, 503 (D.N.J. 2008)).)

First, the law is clear that Section 2000a "only permits the issuance of an injunction and declaratory relief." *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 241 (6th Cir. 1990). Jackson cannot recover damages under Section 2000a. *Leonard v. Bedrock Mgmt. Servs. LLC*, 2022 U.S. App. LEXIS 9308 at *2 (6th Cir. Apr. 6, 2022) (citing 42 U.S.C. § 2000a-3 and *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). Jackson argues that *Williams v. Hayman* holds otherwise, but that case deals with Title II of the *Americans with Disabilities Act*, not the Civil Rights Act. 657 F. Supp. 2d at 502 ("[C]ompensatory damages are available to plaintiffs asserting claims under Title II of the ADA, but only where it is shown that the discrimination was intentional.").

Second, to recover even injunctive relief, Jackson must allege a "real or immediate threat that [she] will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Los*

*Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

Here, Jackson makes no such allegation. She does not allege, for example, that she will return to

Walmart in the future or that an incident like the one that allegedly happened to her in 2021 will

reoccur.[1] *See Mosley v. Marriot Int'l, Inc.*, 2024 U.S. Dist. LEXIS 50505 at *32 (E.D. Mich. Mar.

21, 2024) (granting summary judgment because there were "no facts suggesting Plaintiffs will seek

accommodation from the [Defendant] Hotel in the future or an incident such as this will reoccur");

*see also Glass v. Laketran Transp. Admin.*, 2016 U.S. Dist. LEXIS 16405 at *6 (N.D. Ohio Feb. 10,

2016) (Polster, J.) (dismissing the plaintiff's Section 2000a claim because she failed to allege "any

allegation of continuous or ongoing discrimination by [the defendant]"); *Rachel v. United Dairy

Farmers*, 2012 U.S. Dist. LEXIS 183530 at *14 (N.D. Ohio Nov. 13, 2012) (recommending dismissal

of the plaintiff's Section 2000a claim because of "the absence of any allegation of continuous or

ongoing discrimination by [the defendant]").

      Therefore, Jackson has not stated a cause of action under Section 2000a that injunctive relief

can remedy. Accordingly, the Court dismisses Jackson's second cause of action.

### D.    Third Cause of Action: Discrimination in Violation of 42 U.S.C. § 1983

      Walmart argues that the Court should dismiss Jackson's third cause of action because "Section

1983 claims do not apply to Walmart as they are a private entity" and because Jackson's Amended

Complaint "is entirely devoid of any allegations . . . such that [Walmart] could be sued as a

---

[1] Jackson makes a brief argument in her Opposition that suggests that she may return to Walmart. Specifically, she contends that "the unfortunate truth is that she runs near the highest risk of encountering discrimination every time she steps foot in a Walmart." (Doc. No. 24, PageID# 145.) But again, Jackson cannot amend her Amended Complaint in her Opposition. In any case, even if properly pleaded, such speculative future injury would also fail to state a claim for injunctive relief. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009) (quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001)) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief.").

government entity . . . or that it was acting with the 'color of state law.'" (Doc. No. 22, PageID# 131.)

Jackson responds that by stopping, detaining, and interrogating Jackson, Walmart's Asset Protection Team "took on the role of the police." (Doc. No. 24, PageID# 147.) And she argues that based on the "totality of the circumstances" Walmart "acted under color of law." (*Id.*)

To state a claim under Section 1983, Jackson must allege that: "(1) [s]he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Hardy v. Cmty. Mental Health*, 2018 U.S. App. LEXIS 18781 at *7 (6th Cir. July 10, 2018) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). For a private entity such as Walmart to be liable under Section 1983, "its actions must be fairly attributable to the state." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The Sixth Circuit uses three tests to determine whether a private entity's conduct is fairly attributable to the state. *Id.* Both parties focus their arguments on "the public functions test." That test "requires that 'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

Private security officers performing private security functions—even if those functions entail the investigation of a crime—are not state actors. *Chapman v. Higbee*, 319 F.3d 825, 834 (6th Cir. 2003). However, private security officers may become state actors when they "are endowed by law with plenary police powers such that they are *de facto* police officers." *Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 637 (6th Cir. 2005). Thus, for Walmart to be a state actor, Jackson must allege that the state "delegated" to Walmart's Asset Protection Specialists "powers above and beyond those

12

possessed by ordinary citizens" such as "the power of arrest." *Lindsey v. Detroit Entm't, Ltd. Liab. Co.*, 484 F.3d 824, 831 (6th Cir. 2007). Here, Jackson does not do so. Rather, she alleges that the Asset Protection Specialists "detain" individuals they suspect of theft, "take their license," and "place the information they acquire into a database." (Doc. No. 18, ¶ 24.) The Specialist then "review[s] the circumstances of the alleged theft . . . [to] determine whether the individual . . . should be prosecuted." (*Id.* at ¶ 25.) If prosecution is warranted, the Specialist contacts "the local authorities" who then either "arrest[]" the individual or issue a summons for the individual "to appear at the appropriate tribunal in that particular jurisdiction." (*Id.* at ¶ 26.)

None of these are powers beyond those that ordinary citizens possess. Shopkeepers have the power to detain suspected thieves. *See* Ohio Rev. Code § 2935.041 (Ohio's codification of the shopkeeper's privilege); *see also State v. Bolan*, 271 N.E.2d 839, 841 (Ohio 1971). And with the detained individual's consent, a shopkeeper may take the individual's driver's license. Ohio Rev. Code § 2935.041(E). Tellingly, Jackson does not allege that Walmart's Asset Protection Specialists have the power to arrest. Rather, they must contact "local authorities" to make the arrest. But calling for "police assistance in the lawful exercise of self-help does not convert private action into state action." *Ellison v. Garbarino*, 48 F.3d 192, 197 (6th Cir. 1995); see *also Dressler v. Rice*, 739 F. App'x 814, 824 (6th Cir. 2018) (holding that a private security officer's "request to have [the plaintiff] charged with criminal trespass does not rise above the use of police assistance in the exercise of self-help").

In short, Jackson makes no allegation that Walmart's Asset Protection Specialists are endowed with any power exclusively reserved for the state. Therefore, her Section 1983 cause of action fails

the public function test and so fails to state a claim.  Accordingly, the Court dismisses her third cause of action.

### E.     Fourth and Fifth Causes of Action: False Imprisonment and Intentional Infliction of Emotional Distress

Walmart moves for judgment on the pleadings on Jackson's false imprisonment and intentional infliction of emotional distress claims because they are time-barred.  (Doc. No. 22, PageID# 131-32.)  Specifically, Walmart contends that Jackson's false imprisonment claim has a one-year statute of limitations that accrued on June 1, 2022, when Jackson was released from "confinement."  (*Id*. at PageID# 131.)  And since Jackson's intentional infliction of emotional distress claim is "premised" on her false imprisonment claim, the false imprisonment claim's one-year statute of limitations also applies to her intentional infliction of emotional distress claim, making it time-barred too.  (*Id*. at PageID# 133.)

Jackson responds that since these claims are "civil rights violations," Ohio's "general personal injury statute of limitations" applies rather than "any statute of limitations for specific torts."  (Doc. No. 24, PageID# 149 (citing *Owens v. Okure*, 488 U.S. 235, 236 (1989)).)

In its Reply, Walmart argues that Jackson misconstrues the Supreme Court's holding in *Owens* because it addressed the question of what limitations period to apply to federal Section 1983 actions, not state-law claims like those that are at issue here.  (Doc. No. 28, PageID# 177.)

As an initial matter, a motion for judgment on the pleadings generally "is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations."  *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013).  That is unless "the allegations in the complaint affirmatively show that the claim is time-barred."  *Id*.

14

For the following reasons, the Court concludes that Jackson's allegations affirmatively show that her claims are time-barred.

First, the Court agrees with Walmart that Jackson misconstrues *Owens*.  The Court in *Owens* held that federal courts "draw the limitations period for **§ 1983 actions** from the general or residual statute of limitations for personal-injury actions in the state where the claim arose."  *T&T Mgmt. v. City of Detroit*, 2023 U.S. App. LEXIS 30302 at *9 (6th Cir. Nov. 13, 2023) (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)) (emphasis added).  Stated succinctly, Ohio's two-year statute of limitations for personal-injury claims only applies to Jackson's Section 1983 claim, not her state-law claims for false imprisonment and intentional infliction of emotional distress.  *See Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019).  Ohio's specific tort statute of limitations governs those claims.  *See, e.g., Saalim v. Walmart, Inc.*, 97 F.4th 995 (6th Cir. 2024).

Jackson's false imprisonment claim has a one-year statute of limitations in Ohio.  *Id*. (citing Ohio Rev. Code § 2305.11(A)).  And the claim accrues upon release from confinement.  *Robinson v. Ohio Dep't of Rehab. & Corr.*, 2011 Ohio App. LEXIS 632 at *8 (Ohio Ct. App. 10th Dist. Feb. 17, 2011).  Jackson alleges that her detention lasted for two hours on June 1, 2021.  (Doc. No. 18, ¶ 51.)  Therefore, her claim accrued on June 1, 2021, and she had to bring it by June 1, 2022.  Jackson did not file her original Complaint until June 1, 2023.  Therefore, her false imprisonment claim is time-barred.

Generally, Ohio intentional infliction of emotional distress claims have a four-year statute of limitations.  *Saalim*, 97 F.4th at 1013.  But Ohio courts "look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded" when determining the limitation period to apply.  *Doe v. First United Methodist Church*, 629 N.E.2d 402, 407 (Ohio 1994).  For

example, in *Salim v. Walmart*, the plaintiff brought state law claims for assault, battery, false imprisonment, and false arrest against a private security guard working for Walmart. 97 F.4th at 999, 1000. Since the plaintiff's intentional infliction of emotional distress claim "stem[med] from the alleged assault, battery, false imprisonment, and false arrest" by the security guard, the court concluded that the plaintiff's intentional infliction of emotional distress claim "share[d] the same essential character" as his other state-law claims, and it was thus "subjected to [those claims'] same one-year statute of limitations." *Id*. at 1014.

Here, Jackson alleges that it was the Walmart Asset Protection Specialists' "acts" that caused her emotional distress. (Doc. No. 18, ¶¶ 91, 92.) Specifically, Jackson alleges that the Walmart Asset Protection Specialists "detained [her] and interrogated her for approximately 2 hours, which led to emotional trauma for [her]." (*Id*. at ¶ 51.) According to Jackson's own allegations then, her intentional infliction of emotional distress claim stems from her false imprisonment claim and shares its subject matter. It is therefore subject to her false imprisonment claim's one-year statute of limitations. Consequently, it is time-barred, and the Court dismisses it.

**F.      Sixth and Eighth Causes of Action: Misrepresentation and "Negligently Participating in a Wrongful Prosecution"**

Walmart argues that Jackson's claim for misrepresentation is not applicable to the facts of this case under Ohio law and should be dismissed. (Doc. No. 22, PageID# 134.) And it argues that Ohio does not recognize a "negligently participating in a wrongful prosecution" claim and, therefore, it too should be dismissed. (*Id*. at PageID# 136.)

In her Opposition, Jackson admits that she "mistakenly and incorrectly" alleged misrepresentation and participating in a wrongful prosecution when she meant to plead the claim of malicious prosecution. (Doc. No. 24, PageID# 151.) She "freely admits the error" but asks to amend

16

her Amended Complaint to allege malicious prosecution. She cites Federal Rule of Civil Procedure 15(a)(2) and contends that "justice can only be served by allowing her complaint to be amended to properly include a claim for malicious prosecution." (*Id*. at PageID# 151-52.)

Walmart opposes Jackson's request for leave to amend, arguing that she has had over nine months to amend her Amended Complaint and allowing her to do so now would be unfairly prejudicial to Walmart. (Doc. No. 28, PageID# 179-80.) Further, Walmart contends that any amendment would be futile because a malicious prosecution claim must be brought within one year after the date of accrual, which it argues occurred on June 1, 2021. (*Id*. at PageID# 180.)

Since Jackson seeks to amend after the deadline for amendments without leave of Court has passed, Jackson must first demonstrate "good cause" under Federal Rule of Civil Procedure 16 for her failure to comply with the Court's scheduling order. *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); Fed. R. Civ. P. 16(b)(4). Rule 16 is primarily measured by the "moving party's diligence." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021). But "[b]ound up" in the good cause standard is also the potential prejudice to the non-moving party. *Id*.

Jackson does not explain in her Opposition why she has waited nine months to seek leave to amend her claim. Jackson has been aware of her proposed malicious prosecution claim since at least June 1, 2023, when she filed her original Complaint. Absent any explanation otherwise, the Court concludes that Jackson's failure to amend her claim within the scheduling order's deadline is either "carelessness, which 'is not compatible with a finding of diligence and offers no reason for a grant of relief,' or . . . unwarranted delay." *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) (quoting *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)). Because Jackson has failed to demonstrate any good cause, the Court denies her request for leave to amend

and dismisses her sixth cause of action for misrepresentation and eighth cause of action for negligently participating in a wrongful prosecution.

### G.  Seventh Cause of Action: Defamation

Walmart argues that the Court should dismiss Jackson's seventh cause of action for defamation because, like Jackson's false imprisonment and intentional infliction of emotional distress claims, it is time-barred.  (Doc. No. 22, PageID# 134.)  Specifically, Walmart asserts that defamation has a one-year statute of limitations that accrues on "the date that the words alleged to be defamatory were spoken."  (*Id*.)  Since Jackson alleges that Walmart defamed her on June 1, 2021, Walmart argues that she had to file her claim by June 1, 2022.  (*Id*.)

Jackson responds that the "traditional continuous publication rule" exception applies, which means that "as long as access to a record of what transpired on June 1, 2021, (through an online docket or police blotter)" is available, "she has no date certain for statute of limitation purposes."  (Doc. No. 24, PageID# 150.)

Walmart responds that the traditional continuous publication rule does not apply to Jackson's case because she alleges slander, not libel.  (Doc. No. 28, PageID# 178.)  And even if the Court were to agree with Jackson that she alleges libel, Walmart argues that "there is no indication that Ohio law acknowledges the 'traditional continuous publication rule'" that Jackson cites.  (*Id*. at PageID# 179 (citing *Friedler v. Equitable Life Assurance Soc'y of the United States*, 86 F. App'x 50, 53 (6th Cir. 2003)).)

In Ohio, defamation claims have a one-year statute of limitations.  Ohio Rev. Code 2305.11(A).  And Ohio courts "have consistently held that Ohio has not adopted a 'continuing tort theory' or 'continuing publication' rule for defamation cases."  *Spitzer v. Knapp*, 2019 Ohio App.

LEXIS 2811 at *15-16 (Ohio 5th Dist. Ct. App. July 1, 2019) (collecting cases). Rather, "it is the first publication that controls for purposes of the statute of limitations." *Smith v. Nat'l W. Life*, 92 N.E.3d 169, 172 (Ohio 8th Dist. Ct. App. June 8, 2017).

Accordingly, regardless of whether Jackson alleges libel or slander, her claim is subject to a one-year statute of limitations that accrued on "first publication." *Smith*, 92 N.E.3d at 172. Jackson alleges that Walmart's Asset Protection Specialists "provided the proper authorities with false or misleading information," "which triggered a court summons for the charge of theft." (Doc. No. 18, ¶¶ 107, 108, 112.) And she alleges that she received the court summons on June 1, 2021. (*Id.* at ¶ 52.) Therefore, her defamation claim accrued on June 1, 2021. Since she did not file her original Complaint until June 1, 2023, her defamation claim is time-barred, and the Court dismisses it.

**H.      Ninth Cause of Action: Negligent Asset Protection Policies and Procedures**

Walmart argues that the Court should dismiss Jackson's final cause of action for "negligent asset protection policies and procedures" for two reasons: first, she fails to allege "what duty was owed with regard to Walmart's policies and procedures," and, second, any duty that Walmart may owe "is contractual in nature and does not sound in negligence." (Doc. No. 22, PageID# 135.)

Jackson responds that she has alleged that Walmart's policies are discriminatory, and Walmart owed Jackson "the duty to not be subjected to [its] discriminatory policies." (Doc. No. 24, PageID# 152.) Further, she argues that Walmart was "negligent in the crafting of its policies . . . and this in turn led to the discrimination." (*Id.* at PageID# 152-53.)

For the following reasons, the Court concludes that Jackson has failed to plausibly allege a duty of care that Walmart owed her.

Under Ohio law, a negligence claim requires that Jackson plead "[1] the existence of a duty, [2] a breach of that duty, and [3] an injury that was proximately caused by the breach."  *Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).  Duty "refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff."  *Commerce & Indus. Ins. Co. v. City of Toledo*, 543 N.E.2d 1188, 1192 (Ohio 1989).  Duties "may be established by common law, legislative enactment, or by the particular facts and circumstances of a case."  *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 201 (Ohio 1998).

Jackson alleges that Walmart has asset protection policies, procedures, guidelines, and training programs that tell an Asset Protection Specialist what to do if he or she suspects someone of shoplifting.  (Doc. No. 18, ¶ 124.)  She further alleges that these "policies are racist and target African American shoppers."  (*Id*. at ¶ 125.)  Walmart followed these policies, she asserts, and was therefore negligent, causing Jackson humiliation, distress, and pain and suffering.  (*Id*. at ¶ 128.)

In her Opposition, Jackson argues that her allegation that Walmart's policies are "racist and target African American shoppers" is "a clear sign that the duty to guard against such policies is evoked."  (Doc. No. 24, PageID# 152.)  Even if the Court were to draw that inference, her allegation that Walmart's policies are racist is a "conclusory and unadorned assertion[], [which] [is] not well-pleaded, and [is] not entitled to a presumption of truth at [the pleading] stage in the litigation."  *Harris v. Morris*, 2017 U.S. App. LEXIS 21425 at *8 (6th Cir. Oct. 26, 2017) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)) (characterizing as conclusory allegations that certain professors and school officials were "racist").

Jackson also contends in her Opposition that her Amended Complaint alleges that Walmart "was negligent in the crafting of its policies and procedures," not in following them.  (Doc. No. 24,

PageID# 152-53.)  But Jackson does not actually allege this "negligent crafting" theory of negligence in her Amended Complaint, and, as the Court noted above, she cannot amend her complaint through an opposition brief.  Further, Jackson's allegation that Walmart was negligent in crafting its policies is a legal conclusion.  *See, e.g., Stout v. United States*, 721 F. App'x 462, 467 (6th Cir. 2018) (characterizing the plaintiff's references to negligence as "classic conclusory allegations or legal conclusions in factual garb").  Jackson does not explain what duty Walmart owed her when "crafting its policies," nor whether Ohio courts recognize any such duty.  Accordingly, Jackson has not plausibly alleged a negligence claim against Walmart, so the Court dismisses her ninth cause of action.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS Walmart's Motion for Judgment on the Pleadings.  (Doc. No. 22.)

**IT IS SO ORDERED.**

Dated: May 16, 2024                                  *s/ Pamela A. Barker*
                                                                PAMELA A. BARKER
                                                                UNITED STATES DISTRICT JUDGE